MAYES et al., Appellants, v. PALMER et al.

**Division One, July 13, 1907.**

1. **JUDICIAL NOTICE:** Of Appointment of Judge. The court will take judicial notice of the appointment of the trial judge who was appointed to fill a vacancy caused by the death of the regularly elected judge, and of his subsequent election at a general election to fill out the balance of said unexpired term.

2. **TRIAL: Begun Before and Finished After Election of Judge.** A trial begun before the general election, before a judge legally appointed to serve until a general election, and finished, before the same judge, after that election, at which the same judge was elected for the balance of the unexpired term, was regular, and a motion for a new trial will not be sustained on the theory that the trial was not had and the judgment was not rendered during the same term of office of the judge.

3. **PUBLIC ROAD: Appeal to Circuit Court: Public Necessity.** An appeal lies to the circuit court from the judgment of the county court establishing a public road and ordering it to be opened, and the circuit court can try the cause anew, and has jurisdiction to find that the proposed road is not of public necessity, and on that ground to dismiss the petition therefor. The question of determining whether or not the road is a public necessity has not been given exclusively to the county court.

Appeal from Lincoln Circuit Court.—*Hon. H. W. Johnson, Judge.*

AFFIRMED.

Mayes v. Palmer.

*Wm. A. Dudley* and *Martin & Woolfolk* for appellants.

(1) Upon the expiration of the term of Judge Johnson, November 8, 1904, he no longer carried the proceeding had in this case at the previous October term in his breast and the trial should have been *de novo* at the December term. Clanton v. Ryan, 14 Colo. 419; Ellis v. Rector, 32 Mich. 379; State ex rel. v. Perkins, 139 Mo. 106; Connely v. Ashworth, 98 Cal. 205; Gordon v. Trainor, 92 N. Y. Supp. 321; Babcock v. Wolf, 70 Iowa 576. (2) The question as to the public necessity for a given highway is a legislative question delegated exclusively to the county court, and the court erred in determining the case by declaring the road unnecessary. Kansas City v. Baird, 98 Mo. 215; Savannah v. Hancock, 91 Mo. 57; Aldridge v. Spears, 101 Mo. 400; State ex rel. v. Engleman, 106 Mo. 400; Kansas City v. Oil Co. 140 Mo. 464; St. Louis Co. v. Griswold, 53 Mo. 193; Scott Co. v. Leftwich, 145 Mo. 26; Bridge Co. v. Stone, 174 Mo. 22; State ex rel. v. Thomas, 183 Mo. 229; Howe v. Callaway, 119 Mo. App. 261; Crary v. Port Arthur Chan. Co., 92 Tex. 275; Palmer v. Harris Co., 29 Tex. Civ. App. 340; Powers v Railroad, 33 Ohio St. 429; Schuster v. Sanitary Dist., 177 Ill. 626; Railroad v. Lewiston, 134 Cal. 412; Los Angeles v. Waldron, 65 Cal. 283; Stratford v. Greensboro, 124 N. C. 127; Railroad v. Railroad, 111 Mass. 125; In re Fowler, 53 N. Y. 60; Park Com's v. Armstrong, 45 N. Y. 234.

*Norton, Avery & Young* for respondents.

(1) In truth and in fact Judge Johnson was both *de facto* and *de jure* judge of the circuit court, and had jurisdiction to enter the judgment under any view of the case. (2) Respondents were interested parties, and exercising their right as remonstrators given them by the statute, had a right to appeal and to have this

question of necessity and utility tried anew. There is no authority cited by appellants that justifies them in the conclusion that Judge Johnson did not have jurisdiction to try the question of public utility and necessity. In re Big Hollow Road, 111 Mo. 326; Bennett v. Hall, 184 Mo. 407.

WOODSON, J.—This case originated in the county court of Lincoln county. Appellants filed their petition in said court, asking for the establishment of a public road between the towns of Elsberry and Apex. The respondents, in due time, filed their remonstrance against the prayer of the petition. All jurisdictional steps in the case were properly taken and guarded. The county road commissioner filed his report, as required by law, and respondents filed their written exceptions thereto, and, after having heard both parties, the exceptions were overruled and the road ordered established as prayed. The respondents duly appealed from the order and judgment establishing the road to the circuit court of that county, where a trial *de novo* was had, at the October term, 1904, thereof, before the Hon. H. W. Johnson, Judge, sitting as a jury.

When the cause was called for trial numerous objections to the introduction of any evidence were made by the respondents, which were, by the court, overruled. The appellants then introduced evidence tending to prove all the allegations of the petition, and respondents introduced evidence tending to contradict and disprove those allegations. At the close of the introduction of all the evidence in the cause, the appellants requested the court to state its finding of facts in writing, separately; whereupon the court took the case under advisement, and, thereafter, on November 21st, 1904, in vacation, the judge made and filed with the clerk of said court his findings of fact and conclusions of law. The findings of fact sustained substantially

the allegations of the petition and the regularity and legality of the proceedings, but in its conclusions of law declared that the proposed road was not of sufficient public necessity and practicability to justify the establishment of the same.

The declarations of law given by the court are as follows:

"From the foregoing facts the court concludes that the proceedings had in the county court were regular and that this court obtained jurisdiction of the cause to try the same.

"The proposed road not being of public necessity the petition should not be granted but should be dismissed, and it is so ordered."

Afterwards, at the October adjourned term of said court, held on the 21st day of December, 1904, the appellants excepted to the findings of fact and conclusions of law theretofore filed by the judge in vacation. The court then rendered judgment for the respondents; and on the same day appellants filed their motions for a new trial and in arrest of judgment, which were, by the court, overruled, and exceptions were duly saved, and they have timely appealed to this court from the judgment of the court refusing to establish the road and dismissing the petition.

I. Appellants present but two questions to this court for determination.

First: They contend that the Hon. H. W. Johnson, who tried the case below, was not in fact judge of the circuit court of Lincoln county at the time the judgment was rendered, and for that reason the judgment was and is a nullity.

Second: That the question of the public necessity for the highway is a legislative question delegated exclusively to the county court, and the trial court erred in holding the proposed road was unnecessary.

We will dispose of these questions in the order presented.

Regarding the first question, it may be said, no such question was presented to the trial court. The record discloses that the trial was had "before the Hon. H. W. Johnson, Judge, sitting as a jury," and is perfectly silent as to when or how he became clothed with authority to try the cause. The first mention of this question is found in the motion for a new trial, and that reference is in the following words:

First: "The findings of facts and order dismissing the cause were not made and filed during term of office of the judge who tried this cause."

Second: "The court has no jurisdiction to enter judgment upon proceedings had in this cause before his present term of office began."

Without any evidence whatever to support it, we find in appellants' statement of the case in this court the following: "In the summer of 1903, Judge Hughes of the 11th Judicial Circuit died and Hon. H. W. Johnson was appointed to succeed him, his commission expiring at the next general election, Nov. 8, 1904. On November 8, 1904, Judge Johnson was elected to succeed himself for the remainder of Judge Hughes' term, receiving his commission a few days after the election."

While the record is silent as to the appointment of Mr. Johnson as judge of the 11th Judicial Circuit to succeed Judge Hughes, and to his election on November 8, 1904, to fill out the unexpired term of Judge Hughes, yet the appellants contend that it was the duty of the trial court and is of this court to take judicial notice of those facts, and that they are thereby presented as effectually to the court as if they had been established by proper evidence.

In treating this question in vol. 16, pp. 899 to 902, par. 3, Cyclopedia of Law and Procedure, we find the following:

"a.  In some of the states, courts are expressly required by statute to take judicial notice of whatever is established by law, . . . and judicial departments of the State and of the United States. . . . These statutes seem to be merely declaratory of the *pre-existing rule* upon the subject.

"b.  Courts of a State judicially know who is or was at any time the chief executive thereof, or of any government formerly exercising sovereignty therein. Other officials including *de facto* officers, *whether appointed* by the executive or elected by the Legislature, have been judicially recognized; such as state agents, attorneys-general, auditors-general and their deputies, tax officials, bank commissioners, commissioners of deeds, notaries and paymasters. The date of *accession to office* and the *term of office* are likewise noticed.

"(D)  Courts judicially know who is or was the executive head of the United States; the principal officers of state in the national government; the heads of departments and of bureaus therein; the permanent or *pro tempore* commissioner of patents; the commissioner of the general land office, his *pro tempore* substitute, and principal subordinate officials; the comptroller of the currency or a deputy acting as comptroller. It has been held, however, that the state courts at least do not judicially notice a deputy United States marshal.

"(11)  Since judicial knowledge of official position implies knowledge of the methods by which it is legally obtained, state courts judicially know the *date of holding a general election,* or a *special election* provided for by a general law, and *what officers* are to be elected, such as governor, secretary of state, county superintendent, prosecuting attorney, sheriff, township trustee, or president of the United States; what party 'tickets' were before the voters at a general election; and the result of the election as shown by the official returns. A state court also judicially notices the governor's ap-

*pointments to prominent offices,* such as attorney-general, commissioner of deeds, election commissioner or a sheriff. . . . Federal courts take judicial notice of the date prescribed by law for the general election of state officers, and the legal requirements under which such election is held."

The St. Louis Court of Appeals held that it would take judicial notice of the acts of the mayor of St. Louis in removing the superintendent of the house of refuge from office. [Bristol v. Fischel, 81 Mo. App. 367.]

And this court has held that it would take judicial notice as to who was elected to office at a general election, and such notice embraces those elected to official positions in a county. And that when the judicial memory is at fault, it may refer to documents of reference. In the same case it held that it would take judicial notice of public statutes. [State ex rel. v. Seibert, 130 Mo. 202.]

In the light of the authorities before cited, the authority of the court to take judicial notice of the appointment of H. W. Johnson, Judge of the Eleventh Judicial Circuit, and his subsequent election to fill out the unexpired term of Judge Hughes, will not be questioned, and is not seriously denied by counsel for respondents.

We will now return to the question first presented by this record. Was the Hon. H. W. Johnson, in fact, judge of the circuit court of Lincoln county at the time the judgment was entered in this case?

Judge Hughes, the regularly elected, qualified and acting judge of that circuit, died in the summer of 1903, thereby causing a vacancy in that office. The Governor first appointed Robert D. Rogers judge to fill the vacancy, who resigned and left the office vacant again, and on August 19, 1903, the Governor appointed H. W. Johnson judge of that circuit to fill the second vacancy.

Conceding Judge Johnson served under that appointment until the general election, on November 8, 1904, and was then elected to fill out the remainder of the term, which was December 31, 1904, as claimed by appellants, Judge Johnson's appointment and election were in strict compliance to the requirements of section 1631, Revised Statutes 1899, which is as follows:

"If the office of the judge of any court of record of this State shall become vacant from death, resignation, or from any other cause, such vacancy shall be filled by the appointment of the Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term."

According to this section, he was judge of the Eleventh Judicial Circuit without an intermission from August 19, 1903, to December 31, 1904. It is true he filled a portion of that term under his appointment, and the remainder of it under his election; but the two periods put together covered the residue of the term from August 19, 1903, to December 31, 1904.

Now, according to this record the judge made his finding of fact and gave his conclusions of law on November 21, 1904, and, thereafter, on December 21, 1904, during the same term of court, he rendered the judgment complained of in this case. So it is seen, according to this record, Judge Johnson was judge of that circuit during the entire period that was taken up in the trial of the case, from the presentation of the pleadings to the granting of the appeal to this court, all of which was during the residue of Judge Hughes' term of office.

We are, therefore, unable to concur with the views of counsel for appellants wherein he contends the trial, the finding of facts and the judgment dismissing this

cause were not made and rendered during 'the same term of office of the judge who tried the case.

The same conclusion was reached by this court in the case of State v. Gordon, 196 Mo. 185. The facts in that case were substantially as follows: Judge Davis who tried the case was at the time of the trial serving his first term as judge, and at that time had been re-elected for a second term. He began the trial of the case before the expiration of his first term but did not complete it until the beginning of his second term. He had, however, duly qualified for the second term. And the point was made in that case by defendant, as is in this, that the entire trial did not take place during the term of office of the officer who began the trial, but contended that the trial was begun during the term of office of one officer and concluded during that of another officer, and the mere fact that Judge Davis happened to be the officer of both terms did not differentiate the question involved here from the one that would have been involved had some one else succeeded Judge Davis. The court held, in effect, that defendant's contention was untenable, and that the mere fact that a part of his trial took place during the first term of Judge Davis's office and remainder during his second term did not entitle him to a new trial. In that case, as in this, the entire trial was before the same judge and court, and during the same term of that court, and that is all the law requires.

The case of State ex rel. v. Perkins, 139 Mo. 106, has no application to the facts of this case, because the judge in that case who began the case did not succeed himself, but tried to complete the trial after the expiration of his term and the term of Judge Perkins had begun.

II. The second question presented is, did the circiut court have jurisdiction to try and determine the public necessity of the proposed highway?

This question turns upon the meaning of section 9419, Revised Statutes 1899, which is as follows:

"In all cases of appeals being allowed from the judgment of the county court, assessing damages, or for *opening,* changing or vacating any road, the circuit court shall be possessed of the cause, and shall proceed to hear and determine the same *anew;* but no commissioner shall be appointed by the circuit court, nor shall any appeal prior to the determination thereof in the circuit court operate as a *supersedeas* of the proceedings of the county court."

This section plainly provides for an appeal from the judgment of the county court, assessing damages or for *opening,* changing or vacating any road, and also provides that the circuit court *shall* proceed to try the case *anew.* In the case at bar, the county court entered a judgment ordering the road opened, and an appeal was taken from that judgment to the circuit court of Lincoln county, and the latter court, in compliance to the plain command of that statute, tried the case anew. The circuit court not only followed the spirit of that statute but the letter of it also.

This identical question was presented to this court in the case of Bennett v. Woody, 137 Mo. l. c. 380, and BRACE, J., speaking for the court, used this language: "The respondent contends that the appeal should be dismissed, because the appeal from the county court to the circuit court was premature, in that it was taken from the judgment on the assessment of damages in the county court before any order was made establishing the road. We do not think this contention can be maintained. By section 7801, Revised Statutes 1889, it is provided that" (then follows the quotation of the section which is the same as section 9419, R. S. 1899, heretofore set out in full). Then he proceeds as follows: "By the plain terms of this statute an appeal is contemplated as well from the judgment of the coun-

ty court assessing the damages as from the final judgment ordering the road to be *established and opened,* which can be made only after the county court shall have found that 'the use to which said premises are sought to be appropriated is of a public use, that the proposed road . . . is of sufficient public utility to justify the payment of damages awarded,' and the damages are paid to the owner or into court for his use.''

The statute in question authorizes an appeal from the order of the county court establishing and ordering the road to be *opened,* but does not authorize an appeal from the order of that court refusing to establish and open the road. [Aldridge v. Spears, 101 Mo. 400; In re Big Hollow Road, 111 Mo. 326.]

We are, therefore, of the opinion that an appeal does lie from the judgment of the county court, ordering a public highway opened, to the circuit court, and the judgment of that court is affirmed.

All concur.