Richard C. and Philancy C. HEDGES et al., Appellants,

v.

COUNTY COURT FOR RAY COUNTY, Missouri, et al., Respondents.

No. KCD 29516.

Missouri Court of Appeals, Western District.

April 30, 1979.

Max VonErdmannsdorff, VonErdmannsdorff, Zimmerman, Gunn & Trimble, Kansas City, for appellants.

Harold L. Fridkin and Richard D. Rhyne, of Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, for respondent Crystal Lakes.

David L. Busch, Richmond, for respondent County Court for Ray County.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

The appellants (landowners) brought this action against the County Court of Ray County, Missouri and its members (Court); the Crystal Lakes Development Corporation and the Trustees of Crystal Lakes Subdivision (Crystal), wherein they sought a writ of mandamus, injunction and damages. The relief sought by mandamus was a direction to the Court to set aside its order closing and vacating a county road, as described in metes and bounds in the petition. The case went on change of venue from Ray County to Platte County, Missouri.

After the pleadings were filed and the issues made, Crystal filed its Motion to Dismiss the Petition for Mandamus, upon the grounds that mandamus would not lie under the facts as shown by the record inasmuch as the plaintiffs had an adequate remedy at law, the acts of the Court in vacating the road were judicial or quasi-judicial and were a determination of facts and law by an administrative body, and the order of the Court was regular on its face and not subject to collateral attack in a proceeding in mandamus. The other defendants later joined in this motion. The Court below sustained the motion to dismiss, without stating any reasons, and this appeal followed.

The landowners raise two points on appeal, namely, (1) they did not have any remedy by appeal since the Court lacked jurisdiction to make the order vacating the road because it did not follow the procedures under § 228.110 RSMo 1969 and thus, the order was subject to collateral attack by mandamus; and (2) the landowners had no notice of the proceedings in the Court nor of its order vacating the road and to limit their remedy to appeal from such order would deprive them of their constitutional right to due process.

■ This Court is mindful that in reviewing the propriety of the trial court's action in sustaining the motion to dismiss all properly pleaded facts in the petition and all favorable inferences of fact which may be drawn therefrom must be taken as true. *Dolan v. Ramacciotti*, 462 S.W.2d 812,

814[1] (Mo. banc 1970); *Collins v. Vernon*, 512 S.W.2d 470, 475[5] (Mo.App.1974). Further, all pleadings shall be construed to do substantial justice. Rule 55.24. Finally, the propriety of the dismissal depends upon whether substantial legal principles are invoked on which appellant is entitled to relief. *Brennaman v. Andes & Roberts Brothers Construction Company*, 506 S.W.2d 462, 463[1] (Mo.App.1973).

When so viewed, the landowners' petition discloses that there are seventeen plaintiffs who allege that they are owners of property adjacent to and abutting the road in question; that this road has been in continuous public use since before 1917; that it has been graded and maintained by the County for the benefit of the public as well as the abutting and adjoining property owners; that it has always been connected with other public roadways in the township and county; that it afforded the plaintiffs-landowners the only practical means of ingress and egress to and from their properties; and that these conditions and use existed at the time the plaintiffs acquired their properties and for many years prior thereto.

Further, the record discloses that before the case was dismissed, in answer to interrogatories propounded to them by Crystal, the landowners, under oath, made the foregoing allegations in their petition specific and definite by setting forth in considerable detail the facts and proof in support thereof.

It should be here noted that it is conceded that Crystal also owns land holdings abutting the road in question, which land was a part of other holdings and Crystal was engaged in the development thereof as a lake and recreational facility, for homes and other uses.

The history of these proceedings is long and tortuous and in some respects incomprehensible. On December 30, 1968, the Court had before it the petition of Crystal for an order "closing and vacating" the road. The only part of the Court's record before this Court is its order of December 30, 1968 and it does not appear when Crys-

tal's petition was filed, in response to which the order vacating the road issued. The order does recite that after "being duly advised" the Court finds "that the said road has been and is in such a state of repair that it could not be used by the public; that it has been abandoned for all intents and purposes for a period in excess of ten years; and that to properly repair and maintain the said road for the traveling public would require a prohibitive amount of money to be expanded thereon and place an unreasonable burden upon the county finances". The Court further found "that the vacation of said road will not impose a hardship upon the traveling public". It is also worthwhile to note that the order is referred to in the caption as "in the Matter of *Vacation* of County Road". (Emphasis added)

The factual or evidentiary basis for these findings does not appear. It is conceded that the landowners were not notified of this petition to vacate or of the hearing before the Court; did not appear nor were they represented at the hearing; and, were not served with the ensuing order nor advised thereof.

It is difficult to determine exactly what happened next in the chain of events leading to the filing of the case. In appellants' petition they allege that " * * * a short time after December, 1968, defendant, 'corporation' * * * blocked off and closed said roadway by erecting thereon and across the same * * * gates and fences which have been manned by armed guards * * * which said gate * * * blocks said road and * * * blocks off plaintiffs sole practical means of ingress onto and egress from their said property * * ".

Reasonable inferences can be drawn from this record that Crystal as a part of its petition to vacate or in support thereof undertook to build or rebuild the road lying within its property. Following the order of December 30, 1968, vacating the road, by letter dated September 25, 1969 addressed to the Court, as shown by the landowners, Plaintiffs' Exhibit No. 2, made as an offer of proof, that Crystal restated its position

that "all residents of Ray County and their quests shall be permitted to use the roads constructed by the company * * * ".

Also in June or July, 1973, the landowners requested the Court to vacate its order of December 30, 1968 and were refused. This appears in landowners' answer to Crystal's Interrogatory No. 6. This action was commenced on October 26, 1973.

On March 31, 1975, pursuant to a stipulation of the parties, the trial court issued a temporary injunction prohibiting Crystal or other defendants from closing or obstructing the roadway involved and permitting the use thereof by the plaintiffs and others during the pendency of the litigation. When the judgment dismissing this action by the trial court was entered on May 2, 1977, the temporary order of March 31, 1975 permitting the use of the roadway in question, was extended and continued as to the plaintiffs-landowners (but not to their successors in interest) during the time of this appeal.

Therefore, the clear facts and the inferences to be drawn therefrom are, that except for a short time after the Court's judgment vacating the road when it was obstructed, the landowners were permitted to use the same as in the past and such use continues to the present. It should be noted and emphasized, however, that such use after December 30, 1968 was at the sufferance of Crystal and its use was not as a matter of right as members of the public using a public road, and that such use can be terminated at the will or caprice of Crystal unless the road is restored to its prior public status. So the problem is real and not moot so far as the plaintiffs-landowners are concerned and they properly raise the challenge as to the legality of the Court's judgment of December 30, 1968, vacating this road.

In viewing this case, it should be stated at the outset that there is no dispute, but is apparently conceded by all parties, that the roadway here involved before the controversy arose, was, in fact, a public road in Ray County, Missouri. Appellants maintain that there is but one statutory method for

the lawful vacation of public roads, that being the method provided by what is now § 228.110 RSMo 1969. *Sheppard v. May*, 83 Mo.App. 272, 275[2] (1900). The method there prescribed requires five distinct procedural steps that must be taken before an order vacating a public road can be entered, namely, (1) twelve freeholders of the township must petition that it be vacated; (2) such petition shall be publicly read on the first day of the term at which it is to be presented and the matter continued to the next term; (3) notice thereof shall be posted in three public places for twenty days; (4) all persons whose lands are crossed or touched by the road shall be served with a copy of the petition to vacate; and (5) the petition shall again be publicly read on the first day of the term at which the matter is to be heard.[1] Further, that statute contemplates an opportunity for other freeholders to protest and be accorded a hearing in a remonstrance to the proposed vacation order.

A further statutory provision held applicable to a proceeding of this kind to vacate

a road is Section 228.070 RSMo 1969.[2] See *Morris v. Karr*, 342 Mo. 179, 114 S.W.2d 962, 965[4] (1938).

No contention is made by the respondents that any of these procedural steps were complied with in the instant case. On the contrary, they assert that these statutes and the mandatory requirements therein are not applicable to the proceedings followed in this case leading to the order of the Court vacating the road in question. They argue that the procedures followed in this case were proper under § 228.190. That statute deals with the establishment of roads by prescriptive user and the "abandonment and vacation" by nonuser.[3] This statute originally enacted in 1917 provided for a required period of ten years of nonuser. It was amended in 1953 to reduce this period to five years. As is apparent, this statute contains no procedural requirements to obtain the finding of abandonment and the resulting vacation of the road.

■ Thus, there exist two separate and distinct methods to accomplish the vacation

1. "228.110. Roads may be vacated, how
 1. Any twelve freeholders of the township or townships through which a road runs may make application for the vacation of any such road or part of the same as useless, and the repairing of the same an unreasonable burden upon the district or districts. The petition shall be publicly read on the first day of the term at which it is presented, and the matter continued without further proceedings until the next term.
 2. Notice of the filing of such petition and of the road sought to be vacated shall be posted up in not less than three public places in such township or townships, at least twenty days before the first day of the next term of the court, and a copy of the same shall be personally served on all the persons residing in said district whose lands are crossed or touched by the road proposed to be vacated in the same manner as other notices are required to be served by law; and at the next regular term the same shall again be publicly read on the first day thereof.
 3. If no remonstrances be made thereto in writing, signed by at least twelve freeholders, the court may proceed to vacate such road, or any part thereof, at the cost of the petitioners; but if a remonstrance thereto in writing, signed by at least twelve freeholders, residents of such township or townships, be filed, and the court after considering the same shall decide that it is just to vacate such road, or any part thereof,

against the vacation of which the remonstrance was filed, the costs shall be paid by the parties remonstrating, and the original costs, and damages for opening such vacated road shall be paid by the petitioners to those who paid the same; provided, that if five years have elapsed since the original opening of the same no such reimbursement shall be made."

2. "228.070. Road change or establishment—approval of highway engineer.
 No county court shall order a road established or changed until such proposed road or change has been examined and approved by the county highway engineer."

3. "228.190. Roads considered legally established, when
 All roads in this state that have been established by any order of the county court, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; *and nonuser by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same.*" (As amended, Laws 1953, p. 674, § 1) (Emphasis added)

of a county public road, "formal vacation by an order of the County Court under § 228.-110, or abandonment under § 228.190, i. e. nonuser by the public for the statutory period continuously". *State ex rel. State Highway Commission v. Herman,* 405 S.W.2d 904, 907[2] (Mo.1966); Elliott on Roads and Streets, 4th Ed., Vol. 2, Section 1172.

The respondents stoutly maintain that the proceedings in the County Court of Ray County with reference to the road in question were brought under Section 228.190. Indeed, no other approach is available to them since there is no showing (nor any claim advanced) that any of the procedural steps made mandatory under Section 228.-110 were complied with, in any degree.

 The essential and basic issue presented by proceedings under Section 228.190 is one of fact, i. e. whether there has been a nonuser by the public of a road for five (formerly ten) years continuously. If that is shown, it "shall be deemed an abandonment". *Terhune v. Caton,* 487 S.W.2d 19, 23[3] (Mo.1972). *Cf. Pocoke et al. v. Peterson,* 256 Mo. 501, 165 S.W. 1017, 1021[2] (1914). In order for a public road to be vacated by abandonment, the nonuse not only must be shown for the statutory period but such nonuse must be a clear and entire abandonment by the public. That it is used infrequently, intermittently or rarely does not meet the standard. If used at all, the road will not be deemed abandoned. *Oetting v. Pollock,* 189 Mo.App. 263, 175 S.W. 222[3, 4] (1915), and cases cited therein; *County of Bollinger et al. v. Ladd,* 564 S.W.2d 267, 271[4] (Mo.App.1978). The fact that only part of the road is used, *Proctor et al. v. Proctor,* 222 Mo.App. 21, 4 S.W.2d 882, 885[1] (1927); *Webb v. City of East Prairie,* 359 Mo. 247, 221 S.W.2d 153, 154[1] (1949), or that it ends in a cul-de-sac or dead end, *Lee v. Smith,* 484 S.W.2d 38, 43[7] (Mo.App.1972) does not constitute sufficient evidence of nonuse and abandonment. Further, once a road is established as a public road, its use inures to and becomes affected by a public interest, and the right to use it cannot be abandoned unless all the public concurs. *State ex rel. Carter County v. Lewis,* 294 S.W.2d 954, 958[4] (Mo.App. 1956). The plaintiffs-landowners here also have vested private property rights to the road in question in that as alleged, it provided their only means of ingress or egress from their properties, which rights were effectively destroyed by the Court's order of December 30, 1968—without notice, hearing or any opportunity to appear and protest the closing. So far as this record now discloses and viewed by the standards above enumerated, the whole proceeding before the Court on the petition of Crystal constituted the rankest kind of default. It thus deprived the landowners of valuable property rights without due process of law and was violative of Amendment XIV to the Constitution of the United States and Article I, Section 10, of the Constitution of Missouri.

The Court's order of December 30, 1968 under Section 228.190 was illegal and void and not supported by evidence, and the order and judgment of the court below dismissing this action should not have been entered.

This opinion should properly note certain points and arguments raised in respondents' brief. They assert that mandamus does not lie in this case because landowners-plaintiffs had an adequate remedy at law under the administrative review procedures; that the order of the Court of December 30, 1968 was regular on its face and not subject to collateral attack by mandamus; that since the order represented a judicial or quasi-judicial determination of facts and law, the mandamus action will not lie and that the landowners-plaintiffs were guilty of laches.

 In approaching these areas, it should be borne in mind that County Courts are purely administrative and not judicial bodies, and as such, are strictly circumscribed to powers and authorities conferred upon them by the Constitution and statutes in the management of county business, Article V, Section 1, Missouri Constitution; *State ex rel. Kowats v. Arnold,* 356 Mo. 661, 204 S.W.2d 254 (Banc 1947).

■ The right to seek judicial review of decisions of administrative bodies is granted generally by Article V, Section 22, Missouri Constitution, and the provision implementing this right as it applies to county courts generally, is found in Section 49.230 RSMo 1969, which provides, inter alia, that the aggrieved party must file within ten (10) days from the administrative ruling complained of a notice of appeal with the County Court and that said court shall certify its records to the Circuit Court within thirty (30) days thereafter. However, this Section 49.230 must be read in the light of Section 228.120 RSMo 1969, which provides in part:

"* * *

2. Any order of the county court establishing or vacating a public road shall be subject to judicial review to the same extent and in the manner prescribed by chapter 536, RSMo 1949 (L.1949 p. 551, § 8477)

* * *"

By reason of this statute it has been held that the matter of procedure for judicial review of a county court order establishing or vacating a public road is governed not by Section 49.230 but by Section 228.120 invoking Chapter 536 RSMo 1969, Administrative Procedure and Review Act. *Ross v. Conco Quarry, Inc.,* 543 S.W.2d 568, 573[8] (Mo. App.1976); *State ex rel. Ballard v. Luten,* 555 S.W.2d 855, 856–858[2, 3] (Mo.App. 1977).

Section 536.100 RSMo 1969 provides:

"Any person who has exhausted all administrative remedies provided by law and who is *aggrieved by a final decision in a contested case,* whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in section 536.100 to 536.140, unless some other provision for judicial review is provided by statute; *provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section.* Unreasonable delay on the part of any agency in deciding any contested case shall be

grounds for an order of the court either compelling action by the agency or removing the case to the court for decision." (Emphasis added)

The key term in the foregoing statute is "contested case". This term is given definition by Section 536.010, which provides:

"For the purpose of this chapter

\* \* \* \* \* \*

(2) 'Contested case' means a proceeding before an agency in which legal rights, duties or privileges of *specific parties* are required by law to be determined after hearing; \* \* \* (Emphasis supplied)

\* \* \*"

■ The landowners-plaintiffs in this proceeding were not "specific parties" properly notified and given an opportunity to be heard, and it conclusively appears that their "legal rights" could only be determined "after hearing" for this proceeding to qualify as a "contested case". Although the Court's order of December 30, 1968 makes reference to "hearing evidence", the nature or extent of such evidence does not appear and the clear inference can be drawn that such "evidence", if heard, came from Crystal, the petitioner and advocate for the abandonment, and must be considered as adverse and hostile to the rights of landowners-plaintiffs herein, and in that sense part of the public whose concurrence was a necessary factor. *State ex rel. Carter County v. Lewis,* supra, l. c. 958[7]. The loss of the right to the use of this public road may result only from the acts or concurrence of the parties entitled to its use and not from the adversary or hostile possession of others. *Johnson v. Rasmus,* 237 Mo. 586, 141 S.W. 590, 591[1] (1911). This proceeding, the so-called "hearing" before the Court preliminary to the order of December 30, 1968, bears little resemblance to a "contested case" within the purview of the above-quoted statutory definition. If it was not a contested case it follows that it was a noncontested case. Section 536.150 RSMo 1969 (Laws 1953) is applicable. It states:

"1. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is *not subject to administrative review, determining the legal rights, duties or privileges of any person,* including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, *certiorari, mandamus,* prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, *and may hear such evidence on such question* as may be properly adduced, and the court may determine whether such decision, *in view of the facts as they appear to the court,* is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and *the court shall render judgment accordingly,* and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

2. Nothing in this section of this Act shall apply to contested cases reviewable pursuant to sections 536.100 to 536.140.

3. Nothing in this section shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section." (Emphasis partially the Court's and partially added)

This section makes provision for judicial review by extraordinary powers, such as mandamus, which writ by terms of the statute is more flexible than its common law counterpart and allows the Circuit Court to hear evidence, determine for itself the relevant facts, and enter or direct the entry of an appropriate judgment. *State ex rel. Leggett v. Jensen,* 318 S.W.2d 353, 354[1] (Mo. banc 1958); and *State ex rel. Tax Commission v. Walsh,* 315 S.W.2d 830, 834[1] (Mo. banc 1958).

For the reasons herein stated, the judgment of dismissal below is reversed and the cause remanded to the Circuit Court with directions to hear and determine the issues of fact and law and enter appropriate judgment or direct that such be entered in the County Court of Ray County, Missouri in this matter.

All concur.