**MISSOURI SOCIETY OF the AMERICAN COLLEGE OF GENERAL PRACTITIONERS IN OSTEOPATHIC MEDICINE AND SURGERY, A General Not-For-Profit Corporation, Appellant,**

v.

**Gerald J. RODERICK, D.O., Myral C. Coatney, D.O., Frederick D. Kiehl, D.O., Elmer T. Irinyi, D.O., and Vera Carhart, D.O., Respondents.**

No. WD 42615.

Missouri Court of Appeals,
Western District.

Aug. 7, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 1990.

Application to Transfer Denied
Nov. 20, 1990.

Joseph Y. Decuyper, Decuyper and Associates, Kansas City, for appellant.

John J. Hager, Jolley, Walsh and Hager, P.C., Kansas City, for respondents.

Before LOWENSTEIN, P.J., and CLARK and FENNER, JJ.

CLARK, Judge.

This suit involves a contest between two groups of rival osteopathic physicians over the organizational structure and control of their professional association. The trial court, after a bench trial, entered judgment in favor of the group represented by respondents and this appeal followed.

The organization in question is known as the Missouri Society of the American College of General Practitioners in Osteopathic Medicine and Surgery, hereafter referred to as the Society. The organization had its origin in 1953 and for some time was operated as an unincorporated association. The group's existence was recognized by the national parent group of osteopathic associations by issuance of a charter on June 18, 1953.

The status of the Society between 1953 and 1986 was a subject of dispute between the parties in this case. Respondents contended that a corporate charter had been issued to the Society in Missouri at some time during this period, but the charter had lapsed. Appellant denied the existence of any such prior incorporation.

Whatever may have been the previous status of the Society before 1986, it appears in that year that a need to incorporate was perceived. A member of the Society, Dr. Fred J. Rinehart, was instructed to procure the Missouri incorporation. Articles of incorporation were prepared showing the incorporators to be Rinehart, J.

Myron Auld, Harvey B. Munshaw, James L. Rowland and Maynard L. Whetstone. The initial board of directors as shown on the articles consisted of nine members including the incorporators and four other persons who had apparently been interested previously in the Society. A certificate of incorporation under the general not-for-profit corporation statute was issued to the Society by the Missouri Secretary of State on April 16, 1986.

On May 11, 1986, a meeting of the five incorporators of the Society was held and the issuance of the certificate of incorporation was recognized. Proposed by-laws were submitted and adopted. The incorporators also undertook to elect directors and, although the articles had provided for nine directors, naming those initially selected, the incorporators elected only five to serve until the next annual meeting. Those chosen were the five incorporators.

The by-laws adopted at the May 11, 1986 meeting included the following provisions: "The Board of Governors shall be the governing body of this organization." "The Board of Governors shall consist of twelve (12) members. Six (6) members shall be known as Founding Members who shall serve for life or until incapacitated. Vacancies in the Founding Group shall be filled by unanimous vote of the remaining founder's group." "These bylaws may be amended by a two-thirds (⅔) majority vote of the Board of Governors ..."

The by-laws, which under the evidence were said to have been adopted May 11, 1986, named the founding members of the board of governors and also the "duly elected" members, six in number, to serve in the office as of April 12, 1987.

In January, 1987, a general meeting of the Society's members was held. Some criticism of the by-laws which the incorporators had adopted was voiced and a committee was formed to draft new by-laws. The primary objection to the incorporators' by-laws lay in the provision for lifetime memberships on the board of governors

and in the restrictive language affecting changes in the by-laws. Thereafter, the committee designated by the membership prepared revised by-laws for the Society and submitted them to a "Board" meeting December 6, 1987, and to a general membership meeting January 30, 1988. The revised by-laws were approved at both meetings.

Those who participated in the meeting on December 6, 1987, ostensibly a meeting of the board of directors or the board of governors[1] of the Society, included four of the persons named in the by-laws adopted by the incorporators and five persons who appear to claim membership on the board by virtue of some membership meeting or because of their earlier positions held in the unincorporated association. In consequence of these events, a contest developed between the incorporators, and those Society members of like mind, and the respondents and the Society members aligned with them, over the actual composition of the board governing the association and which of the two sets of by-laws should apply.

This suit, brought in the name and on behalf of the corporation as chartered in 1986, seeks to enjoin respondents from acting to control the corporation under the revised and contested by-laws which purport to give respondents authority over the affairs and assets of appellant corporation. The respondents contend that they are the duly empowered representatives of the corporation and that the original incorporators have no right to hold office under the by-laws they adopted because the format of the corporate organization exceeded the authority delegated to them by the membership when they were commissioned to incorporate the Society.

In its judgment, the trial court found the original incorporators of the Society, Rinehart, Auld, Munshaw, Rowland and Whetstone, to have been bound to create a corporation with a structure identical to that under which the Society had previously op-

---

1. The parties in conducting the Society's affairs seem to have used the terms board of directors and board of governors interchangeably.

erated as an unincorporated association. From this premise, the court held the acts of the incorporators in providing for lifetime memberships on the board of governors, in designating succession to the office of founding members and in restricting the rights of general members to modify the by-laws to be a "ultra vires." The court entered judgment declaring the by-laws of the Society adopted on May 11, 1986 to be void.

Appellant contends the judgment as entered is in error because it is not supported by competent and substantial evidence in two respects. First, because the finding that the Society had earlier been incorporated in Missouri and that specific restrictions were placed on the incorporators limiting the scope of their authority was not proved. Second, that if the incorporators were circumscribed in their choice of an organizational structure, the Society as incorporated was within the scope of that authority.

In the appellate review of a court tried case, the concern is whether or not the trial court reached a proper result. The appellate court's role is not to determine what reasons may have guided the trial court in making its judgment. A correct decision will not be disturbed because the trial court gave a wrong or insufficient reason for its judgment. *Ederle v. Ederle,* 741 S.W.2d 883, 885 (Mo.App.1987).

Section 355.045.1(5), RSMo 1986[2], provides that articles of incorporation for a general not-for-profit corporation shall set forth the number of directors constituting the first board and the name and address of each. Under § 355.060, the initial by-laws of the corporation are to be adopted at the first meeting of the board of directors upon not less than three days' notice of the time and place of the meeting.

In this case, it was undisputed that the first board of directors of the Society under the articles of incorporation filed April 16, 1986 consisted of nine members, five being the incorporators and four being other members of the unincorporated association. The disputed by-laws, which created the

life members of the board of governors, were not adopted at a meeting of the board of directors, as the statute requires, but at a meeting of the incorporators convened after the corporate charter had been issued. Admittedly, there was no notice of the meeting given to the Society directors who were not incorporators. The minutes of the meeting affirmatively state that notice was waived.

Section 355.060.1 relative to the adoption of initial by-laws for a general not-for-profit corporation employs the word "shall" when referring to the meeting of the directors and the notice to be given, to-wit: "After the issuance of the certificate of incorporation, the first meeting of the board of directors *shall* be held . . ., for the purpose of adopting the initial bylaws. . . . The incorporators calling the meeting *shall* give at least three days' notice thereof. . . ." (Emphasis added).

■ The use of "shall" in a statute is indicative of a mandate to act. *State ex rel. Dreer v. Public School Retirement System,* 519 S.W.2d 290, 296 (Mo.1975). The general rule is that use of "shall" is mandatory and not permissive. *Sho-Me Power Corp. v. City of Mountain Grove,* 467 S.W.2d 109, 111–12 (Mo.App.1971). The mandatory nature of a statute is determined from the legislative intent. This depends primarily on the purpose of the enactment. When that purpose relates to the essence of a thing to be done, rather than to a matter of convenience, the provision is deemed mandatory. *State v. Paul,* 437 S.W.2d 98, 101 (Mo.App.1969) (questioned on other grounds, *State v. Clark,* 723 S.W.2d 17 (Mo.App.1986)).

■ It cannot be disputed that the documentary evidence in this case shows incorporators Auld, Munshaw, Rinehart, Rowland and Whetstone to have acted in adopting the initial by-laws for appellant corporation contrary to the direction of the statute quoted above. They did not purport to act as corporate directors, they gave no notice of the May 11, 1986 meeting and

---

**2.** All statutory references are to RSMo 1986.

they excluded from the meeting four directors, Blinn, Ford, Irinyi and Pritchard who were entitled to attend and participate. Irrespective of whether the motivation for their action was well intended or ill-founded, the business purportedly transacted at the meeting was ineffective to establish the contested by-laws as the governing by-laws for the Society.

The basis recited by the trial court to support its judgment declaring the contested by-laws void is irrelevant to the decision. It is of no moment to debate whether the Society had previously been chartered as a not-for-profit Missouri corporation because all agree that if such a corporation ever existed, it was long ago permitted to lapse with no subsequent effort at revival. Whether the incorporators did or did not exceed their commission given by the Society members to form the new corporation is also not an issue in view of the conclusions that the acts of the incorporators were ineffective to produce by-laws containing the disputed provisions. We hold, however, that the decision by the trial court to deny appellant's suit for injunction and to declare the contested by-laws void was correct for the reasons stated in this opinion.

■ We turn now to that portion of the judgment which ruled on respondents' counterclaim. That claim sought, in effect, to declare the by-laws adopted at the December, 1987 and January, 1988 meetings as the true Society by-laws and the corporation directors to be those selected at that time. The trial court so held.

The evidence discussed above demonstrates that an initial board of directors for the Society was named in the articles of incorporation. No by-laws were adopted at any time thereafter because the only body which could act, the first board of directors named in the articles, was never properly convened to transact that business. In the absence of any by-laws describing the method for selecting successor directors and the terms of office, the purported adoption of substitute by-laws by the members of the Society in disagreement with the incorporators was of no effect. The consequence also is that no mechanism was in place for the election of any directors to succeed those named in the articles of incorporation. The present directors of the Society remain those persons originally designated as such in the articles. Adoption of by-laws and further proceedings in conformity with such by-laws, including the election of corporation officers, await the action of those directors at a meeting called as required by the statute.

The circumstances of the Society's affairs described above necessarily require that the trial court's judgment on respondents' counterclaim be reversed. The by-laws purportedly adopted by the Society's members in January, 1988 are not the by-laws of the Society because the authority to adopt by-laws is initially vested by statute in the first board of directors. The trial court erred in ruling otherwise and in directing an accounting.

For the reasons stated, the judgment denying an injunction and other relief to appellant is affirmed. In all other respects the judgment is reversed. Costs are to be divided equally between appellant and respondents.

All concur.